**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.  08-cv-00855-LTB-KMT

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LA PLATA,
COLORADO,

        Plaintiff,

v.

BROWN GROUP RETAIL, INC.,
PLUMMER PRECISION OPTICS CO.,
BLUE JAUNTE COMPANY, INC., and
PLUMMER PRECISION OPTICS WESTERN DIVISION, INC.,

        Defendants.

_____

**MEMORANDUM OPINION AND ORDER**
_____

Babcock, J.

       This environmental contamination case is before me on Defendant, Brown Group Retail,

Inc.'s ("Brown Group"), Partial Motion to Dismiss Second Amended Complaint [**Docket # 57**];

Plaintiff's Response [**Docket # 67**]; and Brown Group's Reply [**Docket # 70**].  Oral argument

would not materially assist the determination of this motion.  After consideration of the motion,

the papers, and the case file, and for the reasons stated below, I GRANT in part and DENY in

part Brown Group's Motion to Dismiss [**Docket # 57**] as follows.

## I.  BACKGROUND

       The following relevant facts are alleged in the Second Amended Complaint [**Docket #

49**].  In 1983, Plaintiff—a county in Colorado—purchased a parcel of land ("the property")

previously owned by Brown Group.  Beginning in 1975, Brown Group had operated a rifle scope

manufacturing facility ("the facility") on the property. Toxic solvents used in the manufacturing process were spilled and leaked onto the floor of the facility and were flushed down the drains of the facility. The plumbing beneath the facility leaked solvents into the surrounding soil and contaminated the groundwater. The spills and leaks continued up until Plaintiff purchased the property in 1983. The property currently houses a detention center.

Plaintiff sampled the soil and groundwater at the property, as well as the surrounding area. Plaintiff's tests showed levels of toxic solvents in the soil and groundwater that exceed government standards for the protection of human health and the environment. The toxic plume extends into otherwise-potable groundwater supplies and reaches the Animas River, which is a source of drinking water. Fumes from the solvents escape the surface of the property into the detention center. Brown Group has not taken steps to abate or contain the contamination.

Plaintiff filed the present Second Amended Complaint on December 18, 2008, alleging seven claims for relief: (1) Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") cost recovery; (2) unjust enrichment; (3) negligence and negligence *per se*; (4) abnormally dangerous activity (strict liability); (5) declaratory relief; (6) Resource Conservation and Recovery Act ("RCRA") relief for ongoing contamination; and (7) RCRA relief for prior contamination while Brown Group was the owner and/or operator of the property and the facility. Brown Group filed the present motion on January 8, 2009 [**Docket # 57**]. Brown Group moves to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6); and for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1).

## II. STANDARDS OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them the authority to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, Rule 12(b)(1) directs a court to dismiss a complaint whenever it appears the court lacks jurisdiction over the subject matter. *See* Fed. R. Civ. P. 12(b)(1) and 12(h)(3). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's factual allegations, but has discretion to consider affidavits and other evidence to resolve disputed jurisdictional facts. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

### B. Fed. R. Civ. P. 12(b)(6)

Granting a motion to dismiss is a harsh remedy which must be exercised with caution to protect the liberal rules of pleading and the interests of justice. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). Thus, the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim. *Id.* Nonetheless, a claim "may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim." *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, a district court must accept as true all factual allegations in the complaint. *See*

*Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). While the factual allegations need not be pleaded in great detail, they must be sufficiently precise to raise a right to relief above the speculative level. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the rule of *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A district court should dismiss the complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 127 S. Ct. at 1974; *see also Kay*, 500 F.3d at 1218. "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974). "Plausibility," however, does not refer to the likelihood that the allegations can be proven or even that the allegations are true. *See id.*

"The determination of whether a complaint contains enough allegations of fact to state a claim to relief that is plausible on its face is dependent on the context of the claim raised." *Mink v. Knox*, 566 F. Supp. 2d 1217, 1221 (D. Colo. 2008); *see also Robbins*, 519 F.3d at 1248. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

Accordingly, "within the context of the claim alleged, the complaint must contain enough specific allegations of fact to show that if all the alleged facts—and only the alleged facts—are believed to be true, the plaintiff has a claim for relief." *Knox*, 566 F. Supp. 2d at 1222; *see Twombly*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.

## III.  ANALYSIS

Brown Group moves to dismiss Plaintiff's Second Claim (unjust enrichment); Third Claim (negligence and negligence *per se*); Fourth Claim (abnormally dangerous activity); Sixth Claim (RCRA Section 6972(a)(1)(A)); and Seventh Claim (RCRA Section 6972(a)(1)(B)).

### A.  Unjust Enrichment

Brown Group initially argues Plaintiff's unjust enrichment claim should be dismissed because it is preempted by Plaintiff's CERCLA claims.  Section 114(b) of CERCLA provides that any person who receives compensation under CERCLA is "precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law."  *See* 42. U.S.C. § 9614(b).  As noted by the Tenth Circuit, however, Section 114(b) does not indicate Congress intended to preempt state-law remedies for hazardous waste contamination.  *See New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006).  Indeed, the language of Section 114(b) itself indicates that a Plaintiff may recover identical compensation under either a state law theory or CERCLA, but not both.  *See Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 127 (3d Cir. 1991) ("Such a provision would be unnecessary and inexplicable if . . . costs that may be recovered under CERCLA may not be recovered under state law.  In other words, if CERCLA's remedies preempted state remedies for recovering costs of hazardous waste cleanups, § 114(b) would make no sense at all."); *see also Stanton Road Assocs.*

*v. Lohrey Enters.*, 984 F.2d 1015, 1021–22 (9th Cir. 1993).

Brown Group next argues that—even if Plaintiff's unjust enrichment claim is not preempted by CERCLA as a general matter of law—it should be preempted here because the unjust enrichment claim seeks the same damages as Plaintiff's CERCLA claim. As an initial matter, I note it does not appear that Plaintiff's unjust enrichment claim seeks recovery of damages that are identical to those available under Plaintiff's CERCLA claim. For example, Plaintiff seeks monetary damages that are unavailable to private parties under CERCLA. *See Gen. Elec. Co.*, 467 F.3d at 1246 n.34 ("CERCLA as enacted provides no private right of action for personal or economic injury caused by the release of hazardous substances"). Even if the recovery sought was identical, however, it is well established that a plaintiff may seek alternative theories of recovery, even when only one of those theories could actually bear fruit at trial. *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1081 (10th Cir. 1999); *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1161 (10th Cir. 1999); *Bradbury v. Dennis*, 368 F.2d 905, 908 (10th Cir. 1966); Fed. R. Civ. P. 8(d).

Brown Group cites a recent case from the United States District Court for the Northern District of Ohio holding: "Where . . . a plaintiff's CERCLA and state law claims seek recovery of the same response costs, courts have found that CERCLA preempts the plaintiff's right to recover under the state law. As plaintiff herein is seeking the same damages under § 107 of CERCLA as it is under the state law claim, these claims are subject to dismissal" under Rule 12(b)(6). *See Ashtabula River Corp. Group II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 986 (N.D. Ohio 2008). I do not find the *Ashtabula River* decision—which is not controlling on this Court in any regard—persuasive. Although *Ashtabula River* referred to "courts" finding dismissal

appropriate under Rule 12(b)(6) when a plaintiff "is seeking the same damages under . . . CERCLA as it is under the state law claim," the court cites to only one case: *Vine Street, LLC v. Keeling*, 460 F. Supp. 2d 728, 757 (E.D. Tex. 2006). *Vine Street*, however, was of an entirely different posture: the plaintiff had already prevailed on both its state law and CERCLA claims, and the issue was whether damages recovery was allowable under both theories, or—as the court ultimately decided—whether CERCLA recovery preempted the plaintiff's right to recover under the state law claim. *See Vine Street*, 460 F. Supp. 2d at 757.

Rather than show dismissal to be the proper remedy, *Vine Street* is consistent with the Federal Rules—and Tenth Circuit authority—allowing a plaintiff to pursue alternative and legally inconsistent theories up until the point where one of the inconsistent theories prevails to the exclusion of the others. *See Cross Country Land Servs., Inc. v. PB Telecomms.*, 276 F. App'x 825, 830–33 (10th Cir. 2008); *Huffman*, 194 F.3d at 1081; *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1161 (10th Cir. 1999); *Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1203 (D. Colo. 2002); *see also United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107, 112–13 (S.D. Ohio 1998) (holding the Federal Rules allow a party to plead as many separate federal statutory and common law claims as the party has, regardless of consistency, and Rule 12(b)(6) dismissal is unavailable on that basis). Accordingly—as *Ashtabula River* cites no relevant law in support and appears contrary to prevailing case law in this Circuit, as well as the Federal Rules—I decline to follow the *Ashtabula River* decision and deny Brown Group's motion to dismiss Plaintiff's unjust enrichment claim.

## B.  Negligence

Brown Group argues Plaintiff's negligence claim should be dismissed because it is

preempted by Plaintiff's CERCLA claim. For the reasons stated above in reference to Plaintiff's unjust enrichment claim, Brown Group's argument is likewise rejected here.

Brown Group also argues Plaintiff fails to allege sufficient facts to support a negligence claim. As Plaintiff's negligence claim arises under Colorado state law, I look to rulings of the Colorado Supreme Court for guidance. *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). If no applicable rulings exist, I must endeavor to predict how the Colorado Supreme Court would rule. *Id.* In such circumstances, I must follow any intermediate state court decision unless other authority demonstrates the Colorado Supreme Court would decide otherwise. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform my analysis. *Id.* at 1574–75.

Under Colorado law, "a claimant alleging negligence of another party must establish the existence of a duty, a breach of that duty, causation, and damages." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 80 (Colo. 2001). Brown Group argues Plaintiff failed to allege sufficient facts to show if all the alleged facts—and only the alleged facts—are shown to be true, Brown Group owed Plaintiff a duty of care. I disagree.

Under Colorado law, the court "determines as a question of law 'the existence and scope of the duty—that is, whether the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection.'" *Observatory Corp. v. Daly*, 780 P.2d 462, 466 (Colo. 1989) (quoting *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980)). So long as the plaintiff pleads sufficient facts—"including the foreseeability of harm from the failure of the defendant to take protective action, the social utility of the defendant's conduct, the

magnitude of the burden of guarding against the harm, the practical consequences of placing such a burden on the defendant, and other relevant factors as disclosed by the particular circumstances of the case"—to establish the existence of a duty if all factual allegations in the complaint are taken as true, a duty will be considered established for purposes of a Rule 12(b)(6) motion to dismiss. *See Erickson*, 127 S. Ct. at 2200; *Observatory Corp.*, 780 P.2d at 466.

In support of its negligence claim, Plaintiff alleges: Brown Group used toxic chemicals in the facility and handled these chemicals in a manner that caused frequent leaks and spills; Brown Group allowed the chemicals to escape into the property outside the facility and the surrounding environment; Brown Group regularly disposed of the chemicals by pouring or washing them down drains; Brown Group failed to obtain government permits or approval for disposal of the chemicals; Brown Group disposed of the chemicals in a manner that caused ongoing environmental degradation; and Brown Group disposed of the chemicals in a manner that caused ongoing harm to persons using the property after the chemicals were spilled. Taking these allegations as true, Plaintiff adequately alleges a duty owed it by Brown Group sufficient to overcome a 12(b)(6) motion. *See Dept. of Health v. The Mill*, 887 P.2d 993, 1002 (Colo. 1994) ("Under Colorado common law, landowners have a duty to prevent activities and conditions on their land from creating an unreasonable risk of harm to others."); *Antolovich v. Brown Group Retail, Inc.*, 183 P.3d 582, 594 (Colo. Ct. App. 2007).

## C.  Negligence *per se*

Brown Group argues Plaintiff's negligence *per se* claim should be dismissed because it is preempted by Plaintiff's CERCLA claim. For the reasons stated above in reference to Plaintiff's unjust enrichment claim, Brown Group's argument is likewise rejected here.

Brown Group also argues Plaintiff fails to allege sufficient facts to support a negligence *per se* claim.  I agree.  Under Colorado law, "negligence *per se* occurs when the defendant violates a statute adopted for the public's safety and the violation proximately causes the plaintiff's injury.  To recover, the plaintiff must also demonstrate that the statute was intended to protect against the type of injury she suffered and that she is a member of the group of persons the statute was intended to protect."  *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002).

Plaintiff's complaint fails to allege the violation of any particular statute that proximately caused Plaintiff's injuries, fails to allege an injury that was of the type the statute was enacted to protect against, and fails to allege Plaintiff is a member of the group of persons the statute was intended to protect.  Instead, Plaintiff's complaint contains a list of what appears to be many thousands of statutes and regulations Brown Group might have violated.  Rather than plead the alleged violations with any degree of specificity—such that the Court would have reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *this* claim, *see Ridge at Red Hawk*, 493 F.3d at 1177—Plaintiff's allegations are so general that they "encompass a wide swath of conduct, much of it [necessarily] innocent."  *See Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 127 S. Ct. at 1974).  This is insufficient to show, within the context of the negligence *per se* claim alleged, "that if all the alleged facts—and only the alleged facts—are believed to be true, the plaintiff has a claim for relief."  *Knox*, 566 F. Supp. 2d at 1222; *see Twombly*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48.  Accordingly, Plaintiff's negligence *per se* claim is dismissed.

### D.  Abnormally Dangerous Activity

Brown Group argues Plaintiff's abnormally dangerous activity claim should be dismissed

because it is preempted by Plaintiff's CERCLA claim. For the reasons stated above in reference to Plaintiff's unjust enrichment claim, Brown Group's argument is likewise rejected here. Brown Group also argues Plaintiff fails to allege sufficient facts to support an abnormally dangerous activity claim. I agree.

The Colorado Supreme Court recognizes a theory of strict liability for ultra-hazardous or abnormally dangerous activities. *See Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 81 (Colo. 1998); *Mountain States Tel. & Tel. Co. v. Horn Tower Const. Co.*, 147 Colo. 166, 170 (Colo. 1961) ("Since the emergence of negligence as an independent tort during the last century, fault has been a necessary ingredient of tort liability except in the area of ultra-hazardous activity."). One who engages in such activity is strictly liable for any damages proximately caused to other persons, land, or chattels by that activity. *See Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 486 (D. Colo. 1998).

Whether an activity is ultra-hazardous—thereby subjecting the actor to strict liability—is a question of law for a court to decide. *See King v. United States*, 53 F. Supp. 2d 1056, 1076 (D. Colo. 1999), *rev'd in part on other grounds*, 301 F.3d 1270 (10th Cir. 2002). In making such a determination, I look to the factors outlined in RESTATEMENT (SECOND) OF TORTS § 520. *Id.* Analysis of these factors requires a particularized inquiry into the activity alleged to be ultra-hazardous or abnormally dangerous. *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1544 (10th Cir. 1992). This initial inquiry is a factual one that requires consideration of all the relevant circumstances. *See id.* As noted by the Tenth Circuit in *Daigle*, the requisite factors I must consider under RESTATEMENT (SECOND) OF TORTS § 520 when determining whether a given activity is ultra-hazardous or abnormally dangerous are:

(a)     existence of a high degree of risk of some harm to the person, land or chattels of

         others;

(b)     likelihood that the harm will be great;

(c)     inability to eliminate the risk by the exercise of reasonable care;

(d)     extent to which the activity is not a matter of common usage;

(e)     inappropriateness of the activity to the place where it is carried on; and

(f)     extent to which its value to the community is outweighed by its dangerous

         attributes.

*See Daigle*, *supra*, 972 F.2d at 1544.  The presence of any one of these factors "is not necessarily

sufficient of itself in a particular case, and ordinarily several of them will be required for strict

liability.  On the other hand, it is not necessary that each of them be present, especially if others

weigh heavily."  RESTATEMENT (SECOND) OF TORTS § 520 comment f.

     The facts alleged in Plaintiff's complaint indicate the chemicals used in the facility were

mishandled, and that it was the mishandling of the chemicals that caused the property

contamination.  Although Plaintiff's complaint states that each of the RESTATEMENT (SECOND)

OF TORTS § 520 factors are met, Plaintiff merely recites the factors a court should consider

without alleging specific facts in support.  Such "statements" are not statements of fact which

must be assumed true for purposes of this motion, but are instead legal conclusions.  *See Smith v.*

*Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).  It is well-established in this Circuit that

"conclusory allegations without supporting factual averments are insufficient to state a claim on

which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Erikson*

*v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001).  Without

specific factual allegations supporting the conclusions, Plaintiff has no claim for relief. *See Twombly*, 127 S. Ct. at 1965; *Robbins*, 519 F.3d at 1247–48. Accordingly, Plaintiff's abnormally dangerous activity claim is likewise dismissed.

### E. RCRA Claims—Notice Requirement

Brown Group argues Plaintiff's RCRA claims should be dismissed for lack of subject matter jurisdiction because Plaintiff failed to comply with RCRA's mandatory notice requirements. While it is unsettled whether the RCRA notice requirements are procedural or jurisdictional, there is no doubt that compliance with the notice requirements "is a mandatory, not optional, condition precedent for suit," and dismissal is therefore the only remedy for failure to comply. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989). Such dismissal is without prejudice. *See id.* at 32. As Plaintiff raises two distinct RCRA claims, each with differing notice requirements, I address the claims separately.

#### *1. Section 6972(a)(1)(A)*

Under Section 6972(a)(1)(A), any person may commence a civil action on his own behalf against any other person who is alleged to be in violation of RCRA. No action may be commenced, however, until sixty days after the plaintiff gives notice of the violation to the Administrator of the Environmental Protection Agency ("EPA"), the state in which the alleged violation occurs, and the violator himself. *See* 42 U.S.C. § 6972(b)(1)(A). Brown Group does not argue Plaintiff failed to notice the EPA or the state.

Plaintiff commenced its RCRA action on April 25, 2008, by filing its Complaint [**Docket # 1**]. Accordingly, Plaintiff must have noticed the required parties no later than February 25, 2008. While Plaintiff sent Brown Group a notice letter on April 18, 2008, that letter was sent too

late to be considered "notice" under RCRA. *See Hallstrom*, 493 U.S. at 26–27. I therefore consider only whether Plaintiff's earlier notice letter of September 24, 2007 ("notice letter"), was sufficient. I find and conclude it was.

The notice to the alleged violator must include sufficient information to permit the recipient to identify: (1) the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated; (2) the activity alleged to constitute the violation; (3) the person or persons responsible for the alleged violation; (4) the date or dates of the violation; and (5) the full name, address, and telephone number of the person giving notice. 40 C.F.R. § 254.3(a). The notice letter at issue here states: "Among the many RCRA violations, Brown Group had owned and operated a treatment, storage, and disposal facility for listed hazardous waste without the necessary hazardous waste permit." *Se*e 42 U.S.C. § 6925; Colo. Rev. Stat. § 25-15-303. Although the notice letter identifies only one specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, it is sufficient to meet the first and second prongs of the notice inquiry. Likewise—because the term "person" under the RCRA is defined broadly to include "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, [or] association," *see United States Dep't of Energy v. Ohio*, 503 U.S. 607, 618–19 (1992); 42 U.S.C. § 6903(15)—the notice letter meets the third prong of the notice inquiry.

Although the notice letter does not state any particular date of the violation, the letter does limit the span of the alleged violation to a time period beginning on November 19, 1980, and ending on the unspecified date in 1983 when Plaintiff purchased the property from Brown Group. This is sufficient to meet the fourth prong of the notice inquiry. Finally, as the notice

letter is provided on letterhead from Plaintiff's attorney that includes the attorney's full name, address, and telephone number, this is sufficient to meet the fifth prong of the notice inquiry. Accordingly, the September 24, 2007, notice letter is sufficient under Section 6972(a)(1)(A).

## 2. Section 6972(a)(1)(B)

Under Section 6972(a)(1)(B), any person may commence a civil action on his own behalf against any other person who is contributing to, or has contributed to, the handling, storage, treatment, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health of the environment. No action may be commenced, however, until ninety days after the plaintiff gives notice of the violation to the Administrator of the Environmental Protection Agency, the state in which the alleged violation occurs, and the violator himself. *See* 42 U.S.C. § 6972(b)(2)(A). Like Plaintiff's claim under Section 6972(a)(1)(A), only the September 24, 2007, notice letter will be considered to have been sent within the time period required under Section 6972(a)(1)(B).

Unlike Section 6972(a)(1)(A), Section 6972(a)(1)(B) does not have a corresponding regulation indicating the minimum requirements of the notice letter. Accordingly, I ask only whether the notice was sufficient to inform Brown Group of the nature of the ongoing problems on the facility site and of its potential responsibility for those problems, and whether the notice was sufficient to give Brown Group "an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174–75 (2000); *Utah State Dep't of Health v. Ng*, 649 F. Supp. 1102, 1107–08 (D. Utah 1986). As the notice letter indicates Plaintiff's intent to bring suit under Section 6972(a)(1)(B), lists specific chemicals dumped on the property, and indicates

the prior releases have ongoing health ramifications, the notice letter was sufficient under

Section 6972(a)(1)(B).  *See Building & Constr. Trades Council of Buffalo v. Downtown Dev.,*

*Inc.*, 448 F.3d 138, 157–58 (2d Cir. 2006).

### F.  RCRA Section 6972(a)(1)(A)

Having determined Plaintiff provided adequate notice to Brown Group on both its

Section 6972(a)(1)(A) and Section 6972(a)(1)(B) claims, I now turn to Brown Group's

arguments attacking the sufficiency of the claims themselves.  Brown Group first argues

Plaintiff's Section 6972(a)(1)(A) claim should be dismissed because the claim is preempted by

Plaintiff's CERCLA claim.  For the reasons stated above in reference to Plaintiff's unjust

enrichment claim, Brown Group's argument is likewise rejected here.

Under Section 6972(a)(1)(A), a citizen may commence suit on his own behalf against any

person "who is alleged to be in violation of any permit, standard, regulation, condition,

requirement, prohibition, or order which has become effective pursuant to this chapter."  42

U.S.C. § 6972(a)(1)(A).  Brown Group argues it sold the property in 1983—and has conducted

no activity on the property since—and therefore cannot be "alleged to be in violation" of RCRA.

Brown Group argues its actions should be considered "wholly past violations" that do not give

rise to suit under Section 6972(a)(1)(A).  *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay*

*Found., Inc.*, 484 U.S. 49, 58–64 (1987).  I agree.

### 1.  Definition of "to be in violation"

As noted by the Supreme Court in *Gwaltney*, "[t]he most natural reading of 'to be in

violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent

violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the

future.  Congress could have phrased its requirement in language that looked to the past ('to have

violated'), but it did not choose this readily available option."  *Gwaltney*, 484 U.S. at 57

(construing language in the Clean Water Act, which the Court noted was "identical [to] language

in the citizen suit provisions of several other environmental statutes that authorize only

prospective relief," including RCRA Section 6972(a)(1)(A)).  The Court then noted that, in

adding a civil remedy under Section 6972(a)(1)(B), "Congress has demonstrated . . . that it

knows how to avoid this prospective implication by using language that explicitly targets wholly

past violations."  *See Gwaltney*, 484 U.S. at 57.

2. *What distinguishes a "wholly past violation" from a "continuous or intermittent violation"*

Although the *Gwaltney* decision established that the "to be in violation" language did not

include "wholly past violations," it did not clarify the line between "wholly past" violations and

those that are "continuous or intermittent."  *See Sierra Club v. El Paso Gold Mines, Inc.*, 421

F.3d 1133, 1139 (10th Cir. 2005).  The Tenth Circuit—discussing the identical language in the

Clean Water Act—noted in *Sierra Club* that courts have made a distinction between those cases

where "all that remained was the migration, decomposition, or diffusion of the pollutants" and

those cases that alleged "contemporaneous discharge" of pollutants by the defendant.  *See id*. at

1140.  Only the latter are considered "continuous or intermittent."  *See id.*

Apparently conceding that the "to be in violation" language in Section 6972(a)(1)(A) is

"primarily forward looking," Plaintiff nonetheless argues that wholly past acts by prior owners

or operators of polluting property should be considered "continuous violations" whenever the

pollution has not been remediated.  Plaintiff directs me to a 1998 opinion of this Court holding

the "overwhelming majority" of courts "have found continuing violations for substantive

violations of the RCRA when the environmental harms caused by the violations are curable, even when the affirmative act that initiates the violation occurred on a single day." *See United States v. Power Eng'g Co.*, 10 F. Supp. 2d 1145, 1159 (D. Colo. 1998). This Court then concluded "that the leaching of hazardous waste into the groundwater from [previously-contaminated] soil constitutes continuing disposal of hazardous waste." *See id*. at 1159–60.

*Power Engineering*, however, did not arise under Section 6972(a)(1)(A), but rather under Sections 6928, 6934, and 6972. *See United States v. Power Eng'g Co.*, 191 F.3d 1224, 1228 (10th Cir. 1999). These statutes do not require that a plaintiff allege the defendant "to be in violation" of the Act. For example, under Section 6928(a)(1), the EPA may proceed against a polluter whenever it determines "that any person *has violated* or is in violation of any requirement of this subchapter." *See* 42 U.S.C. § 6928(a)(1) (emphasis added). Similarly, Section 6934 allows the EPA to issue compliance orders whenever the EPA determines "hazardous waste is, *or has been*, stored, treated, or disposed of"—*see* 42 U.S.C. § 6934(a)(1) (emphasis added)—and Section 6973 allows the EPA to proceed "upon receipt of evidence that the *past or present* handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment." *See* 42 U.S.C. § 6973(a) (emphasis added). As the Supreme Court noted in *Gwaltney*, the existence of a "separate and distinct statutory provision" that allows the EPA to seek civil penalties for "wholly past" violations "supports rather than refutes our conclusion that citizens, unlike the Administrator, may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation." *See Gwaltney*, 484 U.S. at 58–59.

Rather than inquire whether the unremedied pollution in *Power Engineering* rendered the

defendant "to be in violation" of RCRA, the Court relied on the fact that the defendant continued the activities that caused the contamination and refused to remedy the ongoing source of contamination despite being in a position to do so. *See Power Eng'g*, 10 F. Supp. 2d at 1157–60. This is a fundamentally different inquiry from that raised here—namely, whether a prior violation that remains unremedied may form a basis for a citizen suit under Section 6972(a)(1)(A) even when the person initially responsible for the violation no longer owns or operates the polluting facility. Inquiry on this question has met with mixed results in the federal courts. *Compare Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1313–16 (2d Cir. 1993) (holding no valid claim exists against a prior operator under Section 6972(a)(1)(A)), *with City of Toledo v. Beazer Materials and Servs., Inc.*, 833 F. Supp. 646, 656 (N.D. Ohio 1993) (holding a valid claim exists against a prior owner under Section 6972(a)(1)(A) "as long as no proper disposal procedures are put into effect or as long as the waste has not been cleaned up and the environmental effects remain remediable"). Plaintiff argues I should accept the holding in *Beazer Materials* and find that a "prior owner's alleged disposal of hazardous wastes on the property several years prior which continued to exist, unremediated, was sufficient to state an ongoing violation of RCRA under section 6972(a)(1)(A)." This I decline to do.

While Plaintiff's summary of *Beazer Materials* is accurate, I do not find the reasoning persuasive. In reaching its conclusion that Section 6972(a)(1)(A) allows a civil suit for violations against former property owners or operators, *Beazer Materials* relied on *Gache v. Town of Harrison, New York*, an opinion of the Southern District of New York holding: "In short, the disposal of wastes can constitute a continuing violation as long as no proper disposal

19

procedures are put into effect or as long as the waste has not been cleaned up and the environmental effects remain remediable." *Gache*, 813 F. Supp. 1037, 1042 (S.D.N.Y. 1993). In *Gache*, however—as in *Power Engineering*—the defendant was the current owner and operator of the contaminated property. *See Gache*, 813 F. Supp. at 1039–40. To the extent the analysis in *Gache* could be extended to a former owner or operator, the subsequent opinion of the Second Circuit—which is controlling on the Southern District of New York—in *Connecticut Coastal Fishermen's Association* clarified that when the owner or operator alleged to be in violation of RCRA ceased operations before the suit was filed, any violations were "wholly past violations" that do not give rise to suit under Section 6972(a)(1)(A). *See Connecticut Coastal Fishermen's Ass'n*, 989 F.2d at 1313, 1315. The remaining cases cited in *Beazer Materials* likewise concern ongoing violations by an alleged current owner or operator and do not inform my analysis here. *See, e.g., Fallowfield Dev. Corp. v. Strunk*, Civ. A. No. 89-8644, 1990 WL 52745 (E.D. Penn. Apr. 23, 1990); *North Carolina Wildlife Fed'n v. Woodbury*, No. 87-584-CIV-5, 1989 WL 106517 (E.D.N.C. Apr. 25, 1989).

The other cases cited by Plaintiff are also unpersuasive on the question whether a polluter who no longer owns or operates the pollution site may still be subject to suit under Section 6972(a)(1)(A). For example, *Raymond K. Hoxsie Real Estate Trust v. Exxon Educational Foundation* based its conclusion on the fact that the defendant was the owner of the underground storage tank system at issue, even though no longer an owner of the overlaying property. *See Raymond K. Hoxsie*, 81 F. Supp. 2d 359, 364–65 (D.R.I. 2000). Similarly, in *Cornerstone Realty, Inc. v. Dresser Rand Co.*, the defendant was the current owner and operator of the contaminated site. *See Cornerstone Realty*, 993 F. Supp. 107, 117 (D. Conn. 1998). Another

case relied upon by Plaintiff, *Acme Printing Ink Co. v. Menard, Inc.*—while facially concerning Section 6972(a)(1)(A)—based its holding on the plaintiff's allegation that the defendants "contributed to the handling, transportation or disposal of solid or hazardous waste, which has created and presents an imminent or substantial endangerment to the public health or the environment." *See Acme Printing*, 812 F. Supp. 1498, 1512 (E.D. Wis. 1992). This language indicates the claim was actually alleged under Section 6972(a)(1)(B), which allows suit against any person who "contributed . . . to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."

While not cited by either party—perhaps because it addresses the identical language of the Clean Water Act, rather than RCRA—the court's discussion in *Friends of Sakonnet v. Dutra* is well-reasoned and applicable to the question presented here. *See Friends of Sakonnet*, 738 F. Supp. 623 (D.R.I. 1990). *Friends of Sakonnet* first restated the imprecise holding of *Gwaltney* that the "to be in violation" language "does not confer jurisdiction in citizens' suits for wholly past violations." *See Friends of Sakonnet*, 738 F. Supp. at 632. The court then noted "that holding was referring to the [alleged] violation of the Act being in the past." *Id*. In *Friends of Sakonnet*, however—as in this case:

> the [alleged] violation of the Act has been continuing and was occurring when the suits . . . were filed. It is only a *violator*, not the *violation*, that can be said to be in the past. The distinction is not merely semantic. In the *Gwaltney* decision, no further polluting . . . [was] taking place because the violation ha[d] ceased; the purpose of the Act ha[d] been achieved. In the present Sakonnet situation, the polluting continues, although the actor polluting has changed.

*Id*. (emphasis in original). Accordingly, "[t]he question in the Sakonnet River situation is whether a person who has violated the Clean Water Act may avoid liability by relinquishing

ownership of a polluting source although the violation continues." *Id.*

The *Friends of Sakonnet* court relied on the notice provisions of the Clean Water Act—which track the notice provisions of RCRA—and the Supreme Court's conclusion that "the harm sought to be addressed by the citizen suit lies in the present or the future, not the past." *See Gwaltney*, 484 U.S. at 59; *Friends of Sakonnet*, 738 F. Supp. at 633. As noted by the Supreme Court in *Hallstrom*, the legislative history of the RCRA—like that of the Clean Water Act—"indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Hallstrom*, 493 U.S. at 29. Notice gives the Government the opportunity to compel compliance before suit and further gives the defendant the opportunity to bring itself into compliance—"and thus likewise render unnecessary a citizen suit." *Id.* (quoting *Gwaltney*, 484 U.S. at 60). The *Friends of Sakonnet* court concluded that the express provision of notice to allow a polluter to bring itself into compliance indicates Congress intended "[t]he phrase 'any person . . . who is alleged to be in violation' [to be] clearly directed to a present violation by the person against who the citizen suit is brought." *See id.* at 632–33; *see also Gwaltney*, 484 U.S. at 59–60 (noting the statute should not be read in such a manner as to render the notice provisions gratuitous). Once a defendant is no longer an owner or operator of a polluting facility, it has "no control over the pollution source" and would have no ability to "bring itself into complete compliance." *See Friends of Sakonnet*, 738 F. Supp. at 633. Requiring notice of a specific violation in such a situation would be gratuitous. *See id.*

Similar conclusions have been reached by other federal courts—with the notable exception of the wrongly-decided *Beazer Materials*—in the context of suit under Section

6972(a)(1)(A). *See, e.g., Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1010 n.20 (11th Cir. 2004); *Sealy Connecticut, Inc. v. Litton Indus., Inc.*, 989 F. Supp. 120, 123 (D. Conn. 1997); *Harris Bank Hinsdale, N.A. v. Suburban Lawn, Inc.*, No. 92 C 6814, 1992 WL 396295, at *2–3 (N.D. Ill. Dec. 22, 1992); *Coburn v. Sun Chem. Corp.*, Civ. A. No. 88-0120, 1988 WL 120739, at *8–10 (E.D. Penn. Nov. 9, 1988); *Chaplin v. Exxon Co.*, Civ. A. No. H-84-2524, 1986 WL 13130, at *5–6 (S.D. Tex. June 10, 1986). I therefore conclude that under the plain language of the statute, a cause of action under Section 6972(a)(1)(A) can only be brought against an owner or operator of a polluting property who is "alleged to be in violation" of the RCRA at the time the suit is brought.

### 3. Brown Group is not "alleged to be in violation" of RCRA

A review of the second amended complaint shows Plaintiff does not allege Brown Group was a current owner or operator of a polluting property at the time this suit was brought. Brown Group's polluting acts indisputably ceased no later than the date in 1983 when Plaintiff purchased the property. Plaintiff does not allege any special situations—such as the existence of underground storage tanks—that will impute an ownership interest to Brown Group despite Plaintiff owning the property. Accordingly, while the facts alleged show Plaintiff, as the owner and operator of an alleged hazardous waste site, may "be in violation of [a] permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to" RCRA—*see Acme Printing Ink Co. v. Menard, Inc.*, 891 F. Supp. 1289, 1302 (E.D. Wis. 1995)—Plaintiff alleges no facts showing Brown Group to be similarly in violation. Plaintiff's Section 6972(a)(1)(A) claim is therefore dismissed for failure to state a claim upon which relief can be granted.

23

<u>G.  RCRA Section 6972(a)(1)(B)</u>

Brown Group first argues Plaintiff's Section 6972(a)(1)(B) claim should be dismissed because the claim is preempted by Plaintiff's CERCLA claim.  For the reasons stated above in reference to Plaintiff's unjust enrichment claim, Brown Group's argument is likewise rejected here.

Under Section 6972(a)(1)(B), a citizen may commence suit on his own behalf "against any person, including . . . any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).  Brown Group does not dispute it falls within this category of persons.  Brown Group argues, however, that Plaintiff's claims for penalties under Section 6972(a)(1)(B) must be dismissed because Section 6972(a)(1)(B) allows only for injunctive relief.

Section 6972(a) provides: "The district court shall have jurisdiction . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both."  42 U.S.C. § 6972(a).  Although Section 6928(g) provides that any person "who violates any requirement of this subchapter shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each violation," RCRA does not provide any means for a Plaintiff to receive the benefit of the penalty.  Accordingly, to the extent Plaintiff seeks the payment of civil penalties to

itself, such relief is unavailable under Section 6972(a)(1)(B).  As it is not entirely clear from the language of the Second Amended Complaint, however, whether Plaintiff seeks relief above that allowed under the Act, I decline to grant Brown Group's motion to dismiss a portion of Plaintiff's Section 6972(a)(1)(B) claim.  *See Res. Exploration & Min. Inc. v. Itel Corp.*, 492 F. Supp. 515, 516 (D. Colo. 1980) (holding where "it is not clear that the complaint fails to state a claim . . . a motion to dismiss should be denied").

## IV.  CONCLUSION

Accordingly, IT IS ORDERED that Brown Group's Motion to Dismiss [**Docket # 57**] is GRANTED in part and DENIED in part as follows:

1.      To the extent Plaintiff's Third Claim for Relief alleges a claim for negligence *per se*, the claim is dismissed;

2.      Plaintiff's Fourth Claim for Relief for abnormally dangerous activity liability is dismissed;

3.      Plaintiff's Sixth Claim for Relief for liability under 42 U.S.C. § 6972(a)(1)(A) is dismissed;

4.      In all other respects, Brown Group's motion is DENIED.

Each party shall bear its own costs.


Dated: February   18  , 2009.

                              BY THE COURT:

                                  s/Lewis T. Babcock
                              Lewis T. Babcock, Judge