IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-00855-LTB-KMT

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LA PLATA,
COLORADO,

       Plaintiff,

v.

BROWN GROUP RETAIL, INC.,
PLUMMER PRECISION OPTICS CO.,
BLUE JAUNTE COMPANY, INC., and
PLUMMER PRECISION OPTICS WESTERN DIVISION, INC.,

       Defendants.
_____

ORDER
_____

This environmental contamination case is before me on Defendant Brown Retail Group, Inc.'s ("Brown Group") Motion for Summary Judgment on Plaintiff's Second and Third Claims for Relief [Doc # 181], which assert claims for unjust enrichment and negligence. Colorado law governs these claims. After consideration of the motion and all related pleadings, I grant Brown Group's motion for the reasons set forth below.

**I. Facts**

The following facts are drawn from all the dispositive motions that have been filed in this case and are undisputed for purposes of the current motion unless otherwise noted:

In 1983, Plaintiff The Board of County Commissioners of the County of La Plata, Colorado's ("La Plata") purchased land (the "Property") and other assets from Brown Group's predecessor-in-interest. The Property is located on Turner Drive in Durango, Colorado and is

now the site of a detention center (the "Jail"). The Property sits on the upper hillside of an industrial park, approximately one half mile west of the Animas River. La Plata remains the owner of the Property.

In 1975, Outdoor Sports Industries, Inc. ("OSI") acquired the Property, which was vacant land at the time, and built a lens manufacturing plant (the "Facility") on it. Brown Group does not dispute that it is the successor-in-interest to OSI as a result of a series of transactions that need not be described in further detail for purposes of the present motion. For purposes of simplicity, "Brown Group" is hereinafter also used to refer to OSI.

From 1975-76 to 1979, Brown Group operated the Facility to produce optical lenses incorporated into rifle scopes and to assemble rifle scopes. Then, in September of 1979, Brown Group leased at least a portion of the Property and the Facility to Defendant Plummer Precision Optics - Western Division, Inc., a wholly owned subsidiary of Defendant Plummer Precision Optics Co., predecessor-in-interest to Defendant Blue Juante Company, Inc. (collectively "Plummer"). Brown Group also sold a substantial portion of its lens manufacturing equipment, material, and inventory to Plummer. Default Judgment was entered against Plummer on March 13, 2009, and its liability is not presently at issue.

From 1979 to 1982, Plummer continued the operation of the Facility in the same or similar manner as Brown Group. Brown Group remained owner of the Property and the Facility and purchased lens from Plummer throughout this time. Plummer closed the Facility in late 1982.

Chlorinated solvents of various types including trichloroethylene/trichloroethene ("TCE") and 1,1,1- trichlorethane ("TCA") were used in the manufacturing process at the

2

Facility. The TCA used at the Plant was formulated with additives such as 1,4 dioxane and contained TCE as an impurity. Brown Group admits that chlorinated solvents (collectively "the Solvents") were released during lens manufacturing at the Facility but asserts that it is unclear who was operating the Facility at the time of the release.

At the time La Plata purchased the Property, it was not informed that the Solvents had contaminated the Property. In June of 2003, La Plata retained Plateau Environmental Services ("Plateau") to investigate whether the Property was contaminated with hazardous waste due to the actions of "the Redfield Company (the previous site occupant)."

In August of 2003, Plateau communicated to the Colorado Department of Public Health and Environment (the "CDPHE") that contamination at the Property "was believed to have occurred during the period when Redfield Riflescopes had operations at the site" and that contamination was detected in soil located in a former leach field. This communication is reflected in a Record of Communication which has been authenticated buy the CDPHE and is admissible under the Public Records exception to the hearsay rule. *See* Fed. R. Evid. 803(8). This communication was also confirmed in an August 2003 email from Plateau to La Plata which states that Plateau provided CDPHE with notice of the "historical release" of Solvents at the Jail and that CDPHE knows the release was "due to the activity of Redfield." In this email, Plateau noted that it needed to be determined if the releases occurred "pre or post 1980."

Plateau provided La Plata with a report dated August 28, 2003 from its "Solvent Investigation." The report noted that the investigations "focused on the currently unused septic tank and leach field" and that the "Redfield rifle scope factory had previously occupied the building from 1972 to the end of 1980 or early 1981 and used this system for waste disposal."

3

The conclusions in the report included the following:

> The facility is the former location of a rifle sight manufacturing facility that used chlorinated solvents in the manufacturing process.
>
> Solvent contamination was detected in several of the soil samples collected. Ground water contamination was detected in the two monitor wells that contained water. The solid and ground water contamination levels are above state standards.

La Plata forwarded a copy of the report to the CDPHE with a cover letter that stated that the report was commissioned "to establish whether there has been contamination at [the Jail] which is a former Redfield Scope factory" and "was prompted by the recent reports ... about another Redfield Scope factory ... which has experienced contamination."

Plateau continued to believe that a septic tank and leach field were a possible source of contamination at the Property until June 11, 2007, when it was determined that the Property likely never had a leach field. La Plata asserts that it could not have ruled out the "working theory" that a septic tank and leach field were responsible for any contamination at the Property prior to June 11, 2007 because electronic government records that disproved this theory were not made available until this date. While it seems implausible/unreasonable that it took La Plata four years to make this determination, I afford La Plata the benefit of the doubt on this fact question. Even so, as discussed below, the applicable law is against La Plata.

On September 24, 2007, La Plata sent Brown Group a letter advising it of La Plata's intent to commence litigation under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, if Brown Group did not reimburse La Plata for its environmental investigation costs already incurred and agree to cover all future investigation and cleanup costs relating to the Property. In a letter dated January 24, 2008, Brown Group advised La Plata that it would not be

reimbursing La Plata for past or future costs because, among other things, La Plata failed to show that Brown Group's actions are the source of contamination at the Property and nearby sites.

La Plata commenced the present action on April 25, 2008. Brown Group argues that La Plata's claims for unjust enrichment and negligence are time-barred.

## II. Standard of Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule

56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable factfinder could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable factfinders could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable factfinder could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

**A. La Plata's Unjust Enrichment Claim**

The parties agree that La Plata's unjust enrichment claim is subject to either a two or three year limitations period. *See* Colo. Rev. Stat. § 13-80-102(1)(a) (establishing two-year statute of limitations for tort actions); Colo. Rev. Stat. § 13-80-101(a) (establishing three-year statue of limitations for contract actions). *See also Robinson v. Colo. State Lottery Div.,* 179 P.3d 998, 1007 (Colo. 2008) ("... an unjust enrichment claim can be predicated on either tort or contract ...."). Neither party argues whether La Plata's unjust enrichment claim is properly characterized as a tort or a contract claim, and I need not resolve this issue for purposes of Brown Group's summary judgment motion.

The determinative issue of Brown Group's summary judgment motion on La Plata's claim for unjust enrichments is when this claim accrued. Brown Group argues that La Plata's unjust enrichment claim accrued in 2003 while La Plata argues that this claim did not accrue

6

until 2007 at the earliest.

Under Colo. Rev. Stat. § 13-80-108(1), a cause of action for injury to property "shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." This standard is objective and focuses on "a plaintiff's knowledge of facts that would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of the defendant." *Colburn v. Kopit,* 59 P.3d 295, 298 (Colo. App. 2002) (citation omitted). Under Colo. Rev. Stat. § 13-80-108(6), a cause of action for breach of an implied contract "shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." This is likewise an objective standard.

The undisputed facts and evidence set forth above demonstrate that La Plata knew in 2003 that the Property had been damaged by contamination from the Solvents and that, as far as La Plata was concerned, this contamination was caused by manufacturing operations at the Facility. La Plata argues that this is insufficient to trigger the accrual date for its unjust enrichment claim because it did not know that its "working theory" of how the Solvent contamination occurred was not disproven until 2007. As Brown Group points out, however, the cases that La Plata cites for its position that its tort claims against Brown Group did not accrue until La Plata knew the *precise* cause of Solvent contamination at the property are distinguishable. *See In re Bridgestone/Firestone, Inc.,* 200 F.Supp.2d 997 (S.D. Ind. 2002) (analyzing Colorado's general discovery rule "in light of the broad standard for surviving a Rule 12(b)(6) motion"); *Fin Assocs., Ltd. v. G.E. Johnson Constr. Co.,* 723 P.2d 135 (Colo. 1986) (analyzing Colo. Rev. Stat. § 13-80-187 which requires actions concerning improvements in real

7

property to be brought within two years of the time when "the damaged party discovers ... or should have discovered the defect in improvement which ultimately causes the injury").

Instead, this case is more akin to *Kohler v. Germain Inv. Co.,* 634 P.3d 214 (Colo. App. 1996). In *Kohler*, the Colorado Court of Appeals affirmed the dismissal of plaintiffs' claims to recover damages for underground contamination on summary judgment pursuant to Colo. Rev. Stat. § 13-80-108(1) based on a report that disclosed unacceptable levels of contamination on plaintiffs' property and that stated that the contamination may have been caused by releases from a gas station once owned by the defendant. In so ruling, the Court noted that "the fact that various parties may be liable for the contamination does not excuse plaintiffs from the statutory obligation to exercise reasonable diligence in determining the responsible party." *Id.* at 869. This is equally true in this case where La Plata repeatedly identified the Facility as the cause of contamination at the Property and could have easily ascertained its historical ownership.

To the extent that its unjust enrichment claim sounds in contract, La Plata further argues that this claim did not accrue until 2008 when Brown Group communicated its refusal to pay for investigation and cleanup of the Property. To recover under a theory of unjust enrichment, a plaintiff must show that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *Robinson,* 179 P.3d at 1007. Thus, La Plata is not required to show that it made a demand for payment that was refused by Brown Group to prevail on its unjust enrichment claim. There is therefore no basis to delay the accrual of this claim until the occurrence of these events.

Because the relevant facts and inferences are not in dispute relative to the statute of limitations on La Plata's unjust enrichment claim, this issue may be decided as a matter of law.

8

*Kohler*, 934 P.2d at 869. I conclude that this claim began to accrue in 2003 because La Plata knew at that time that the Property had been damaged by contamination from the Solvents that, by any reasonable estimation, was caused by manufacturing operations at the Facility and began to incur costs relating to the investigation and cleanup of the same. La Plata's unjust enrichment claim against Brown Group is therefore time-barred.

**B. La Plata's Negligence Claim**

The same analysis under Colo. Rev. Stat. §§ 13-80-102 (1)(a) & 108(1) applicable to La Plata's unjust enrichment claim is applicable to La Plata's negligence claim. Accordingly, La Plata's negligence claim against Brown Group is likewise time-barred.

## IV. Conclusion

IT IS HEREBY ORDERED that

1. Brown Group's Motion for Summary Judgment on Plaintiff's Second and Third Claims for Relief [Doc # 181]is GRANTED; and

2. La Plata's Second and Third Claims for Relief, which assert claims for unjust enrichment and negligence, are DISMISSED WITH PREJUDICE.

Dated: August  12 , 2010.

BY THE COURT:

　s/Lewis T. Babcock　
Lewis T. Babcock, Judge